## UNITED STATES *v.* DEAVER.

*(District Court, W. D. North Carolina.* 1882

1. CRIMINAL LAW—EXTORTION—REV. ST. § 3169.

   Extortion is the taking or obtaining of anything from another by a public officer by means of illegal compulsion or oppressive exaction. The offense of extortion, under subdivision 1, § 3169, of the Revised Statutes, is the same as the offense of extortion in the common law.

2. SAME—OPPRESSION.

   Oppression is an act of cruelty, severity, unlawful exaction, domination, or use of excessive authority.

3. SAME—BY OFFICER.

   To make an act oppressive on the part of an officer under the statute, it must be done willfully, "under color of law," and "without legal authority."

**4. SAME—MILITARY FORCE—AUTHORITY OF OFFICERS.**

Where an officer willfully and knowingly makes false representations to his superior officers as to the violent and lawless condition of the country, and thus induces his superior officers to send soldiers, which were unnecessary for the proper execution of the law, he is guilty of oppression. The law invests its officers with the necessary power to execute its mandates, and affords them protection while properly performing official duties.

**5. SAME—ACTS WITHOUT AUTHORITY OF LAW.**

The destruction of a still by a revenue officer, before it had been condemned by a proper decree of the court as forfeited to the United States, is an act of oppression, as it is without authority of law.

**6. SAME—REVENUE OFFICERS.**

Where a revenue officer collects from parties sums of money as special taxes, as wholesale and retail dealers in spirits, when no such taxes have been regularly assessed against them, he is guilty of oppression, although such parties had been guilty of selling spirits at wholesale and retail without a license, as required by law; and the fact that he reported such taxes to the collector of the district as received, and the collector of the district, in his settlement with the revenue department, was required to pay the sums collected after the manner of their collection was fully known to the department, will not render legal the acts of the defendants knowingly and willfully done, without authority of law.

**7. SAME—COMPROMISING OFFENSES.**

The principle and policy of the common law, that a ministerial officer who had arrested a person, and who takes from such person money, or other reward, under a pretense or promise of getting the offender discharged, is guilty of a criminal offense, was intended to be extended, by subdivision 10 of section 3169 of the Revised Statutes, to the officers of the revenue; and any subordinate revenue officer who demands or accepts, or attempts to collect, directly or indirectly, as payment or gift, or otherwise, any sum of money, or other thing of value, for a compromise of the violation of the revenue laws, is guilty of a misdemeanor.

An indictment founded upon the *first* and *tenth* subdivisions of section 3169 of the Revised Statutes.

*James E. Boyd,* Dist. Atty., for the United States.

*C. M. McLoud* and *James W. Gudger,* for defendants.

DICK, D. J., (*charging jury.*) This is the first time that it has been my duty in the course of a trial to construe this statute, and I am not aware of any direct judicial decision upon the subject. I will endeavor to ascertain the meaning of the statute by applying certain well-settled rules of construction which have been adopted by the courts and learned text-writers.

In the construction of a statute we should endeavor to find the intent, object, and purpose of the legislature in enacting the law, and this must be done by considering the words, the context, and the subject-matter. Generally, words must be taken in their ordinary and familiar signification, but when they have acquired a legal and tech-

nical signification we must presume that the legislature used them in their legal and technical sense. The ordinary meaning of the word "extortion" is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction. If an officer of the law has a prisoner in custody, and either by promises or threats induces him to make a confession of crime, such confession is regarded as extorted or forced, and is not admissible in evidence against the prisoner. If such confessions are made to a person not in authority, and in no way directly connected with the prosecution, the strictness of the rule is somewhat modified. The word "extortion" has acquired a technical meaning in the common law, and designates a crime committed by an officer of the law, who, under color of his office, unlawfully and corruptly takes any money or thing of value that is not due to him, or more than is due, or before it is due. The officer must unlawfully and corruptly receive such money or article of value for *his own benefit* or *advantage*.

We may well infer that congress used this word in the statute in its restricted and technical sense, as in the same clause the word "oppression" is used, which has a more extensive signification, and will embrace many other acts of official malfeasance and misfeasance. If a judicial officer, in the discharge of his official functions, acted partially, maliciously, and corruptly, he was indictable at common law for the crime of oppression in office. Gross misconduct on the part of an inferior or ministerial officer was denominated malfeasance, or misfeasance in office. If a ministerial officer arrests and ties a person for some petty offense who makes no resistance, but quietly submits to legal authority, there would be a strong presumption that the officer acted from improper motives of oppression; but if the prisoner was a man of desperate and lawless character, and manifested a purpose to resist or escape, and he is charged with a serious crime, then it would be the duty of the officer to secure the prisoner by the best means in his power.

The word "oppression" has not acquired a strictly technical meaning, and may in this statute be taken in its ordinary sense, which is an act of cruelty, severity, unlawful exaction, domination, or excessive use of authority. When a revenue officer, under color of law, willfully and unlawfully takes the property of another, or subjects him to greater hardships than are necessary for the proper enforcement of the law, he is guilty of oppression. It is not essential that an unlawful act should be a serious injury to a person to make it oppressive. The exercise of unlawful power or other means, in de-

priving an individual of his liberty or property against his will, is generally an act of oppression. One of the wisest and best rulers that ever governed ancient Athens was called a tyrant because he exercised sovereign power contrary to the constitution and laws of the state. He established justice, insured domestic tranquillity, and promoted the general welfare of his people, and yet his numerous beneficences did not atone for his usurpation of authority, and his name, fame, and splendid achievements are associated in history with the odium of tyranny.

In some instances a person may be deprived of his rights and his property without the ordinary process of law, and still the acts not be official oppression. I will illustrate this position by instances which have sometimes occurred in the courts. A person willfully and unlawfully does some serious bodily injury to another. He may be indicted for a crime against the peace and dignity of the state, and he is also liable to an action for the civil injury. If he is indicted and convicted of the crime, the judge, before passing sentence, may properly tell the defendant that if he will make suitable compensation for the civil injury the sentence will be greatly mitigated. The defendant acts upon this suggestion, and pays a large sum of money by way of compensation to the injured party. In such a case the defendant is deprived of his property without the right of trial by jury, and yet this is not judicial oppression; and such proceedings have often been adopted in the courts of the common law, both in this country and in England.

At the federal court in Greensboro some time ago a number of tobacco manufacturers were indicted for violations of the internal-revenue laws. They became satisfied, from the careful preparation of the cases by the assistant district attorney, that they would be convicted, and they pleaded guilty, and on suspension of judgment offered terms of compromise to the commissioner of internal revenue. The terms offered were not accepted, and a sum of money was exacted by way of compromise which made nearly all of the defendants insolvent; and yet these proceedings were not acts of official oppression, as they were done under authority of law. The defendants accepted the terms to avoid the severe punishments to which their violations of law had subjected them. In this court there have been frequent instances of defendants pleading guilty, or, upon conviction, paying sums of money by way of compromise, or in lieu of penalties, in order to obtain suspension of judgment on the crimes charged.

To make an act oppressive on the part of an officer, under this statute, it must be done willfully, "under color of law," and without legal authority. You must carefully consider all the evidence relating to the several counts in the indictment upon this clausF of the statute, and if you are fully satisfied from the evidence that the defendant, under color of his office, exacted and received any money or thing of value from the persons named in the indictment, for his own benefit or advantage, which was not due to him, or more than was due, or before it was due, then you may properly find him guilty of extortion as charged in the indictment.

If you are satisfied beyond a reasonable doubt that the defendant, under "color of law," illegally, unjustly, and willfully deprived the persons named in the indictment of their property, or used unauthorized or excessive force towards them in the transactions mentioned, then you may properly find him guilty of oppression under color of law.

It was insisted by the district attorney that the defendant, in using unnecessarily the regular soldiers of the government, was guilty of an act of oppression, as the force was excessive. The soldiers were sent by a superior officer at the request of the defendant, and under orders from the proper department at Washington. While I do not approve of the use of soldiers in the execution of the process of law courts, I will take it for granted, for the purposes of this trial, that the officers at Washington, in ordering the soldiers to be sent to the defendant, did not exceed the limits of their constitutional authority, and the defendant was not guilty of oppression, under color of law, if he used the soldiers properly in accomplishing the purposes intended. If however, the defendant willfully and knowingly made false representations to his superior officers as to the violent and lawless condition of the country, and thus induced his superior officers to send soldiers, which were unnecessary for the proper execution of the law, then he was guilty of an act of oppression, as the mere presence of a company of soldiers was excessive force in a peaceable community, and was well calculated to produce disquietude and alarm among a law-abiding people, who had so recently witnessed the disorder and devastation of war. The peace, security, and well-being of society, and the very existence of political government, require that the laws of the land should be speedily and effectually enforced. For these purposes the law invests its officers with the necessary authority and power for tne effectual execution of its mandates, and it affords them all the protection possible in the rightful performance of the duties imposed.

Sheriffs and marshals have the authority to appoint necessary deputies to assist them in the execution of process, and they may also summon the *posse comitatus* for such purpose.

Collectors, deputy collectors, and revenue agents are authorized to make seizure of property for violations of the internal-revenue laws, and the commissioner of internal revenue is empowered to furnish them the necessary force to enable them to perform their official duties. We frequently hear of revenue officers and agents, well armed and in large numbers, making what they call "raids" through the country. When the emergencies of the service require it, all officers of the law should carry with them such assistance as will tend to prevent lawless resistance, or enable them to easily overcome resistance if made. They are not required to risk their lives in an equal rencounter with lawless and desperate men, or desist from the performance of duty when armed resistance is made. The law must be supreme in its appropriate sphere, and its officers, in the execution of its mandate, may use just such force as may be necessary to accomplish its purposes. If they use excessive force, then their acts are unjustifiable and oppressive. If an officer acts honestly, and without any malice or corruption, the force used must appear to be clearly excessive before he is deemed guilty of oppression under color of law. You have heard the evidence as to the existence of the violations of law in the section of country in which the defendant was performing official duty, and as to the character and disposition of the citizens of that community; and it is for you to say whether there was such a condition of insubordination and lawlessness as to justify the proceedings of the defendant.

It was further insisted that the defendant, in cutting and destroying the still of John Wortman before it had been condemned by a proper decree of this court as forfeited to the United States, was guilty of an act of oppression, as he acted without authority of law. The still had been used in the illicit distillation of spirits, and was found in a still-house, and was liable to forfeiture at the time of the unlawful use, but the seizure did not make the forfeiture absolute. The owner was entitled to be heard in proper legal proceedings before his property could be condemned as forfeited. The act of congress authorizing revenue officers, upon certain conditions and under certain circumstances, to destroy illicit stills, had not then been passed. The destruction of said still was, therefore, without authority of law, and the rule of law is that when an unlawful act is done by a person, there is a presumption of an unlawful intent; but this

presumption may be rebutted by facts and circumstances showing that there was no actual unlawful intent. The correspondence between the defendant and the revenue department upon this subject has been read in your hearing, and if this evidence satisfies you that the defendant acted without any unlawful intent, then the presumption of law is rebutted and the defendant is not guilty in this matter, as there must be an unlawful act done with an unlawful intent to constitute crime.

It was further insisted that the defendant was guilty of an act of willful oppression under color of law in collecting from the parties named in the indictment sums of money as special taxes as wholesale and retail dealers in spirits, when no such taxes had been regularly assessed against them. The said parties had been guilty of selling spirits at wholesale and retail without license obtained as required by law. The defendant reported such taxes as received to the collector of the district, but the same were not reported by the collector to the revenue department at Washington until after the commencement of this prosecution. The collector, in his settlement with said department, was required to pay the sums collected, after the manner of their collection was fully known in the offices of the department. This payment did not render legal the acts of the defendant, if he acted, knowingly and willfully, without authority of law. The department had the power to have such taxes assessed against the parties named for selling spirits at wholesale and retail without license. You have heard read the correspondence between the defendant and the revenue department upon this subject, and if you believe that he was instructed or authorized to make such collection of special taxes then he cannot be held criminally liable. The defendant, without any warrant of distraint, advertised the lands of some of the parties named in the indictment for sale for non-payment of the special taxes referred to. The lands were not sold and the possession of said parties was in no way disturbed. This was not an act of oppression, as it resulted in no injury; but it may be considered in connection with other acts as tending to manifest a purpose of oppression on the part of the defendant.

This court has no jurisdiction over crimes, except those defined and declared by a statute of the United States. It never enters the broad fields of the common law to investigate and punish offenses committed by its officers, unless provision is made for such proceedings by a federal statute. It looks to the common law for instruction and guidance as to the forms and modes of procedure in a

criminal trial, but never as a source of jurisdiction in matters of crime. This indictment is founded upon a federal statute, and the defendant cannot be convicted except for acts of misfeasance and malfeasance mentioned in the statute, and distinctly and positively charged in the indictment. It is therefore unnecessary for me to consider the able arguments of the district attorney and the authorities cited by him as to the offenses of officers at the common law which are not embraced in the statute and indictment before us.

I will now give you my construction of the tenth subdivision of the statute, upon which some of the counts in the bill of indictment are founded. At the common law it was an offense against the administration of justice for a ministerial officer who had arrested a person to take from him money or other reward under a pretense or promise of getting the offender discharged. Such an act was justly regarded as a gross impropriety and breach of duty on the part of an officer employed by the government to assist in the enforcement of the law. The officer could not properly receive any compensation in such matters except his lawful fees. The statute before us was intended to extend this wise principle and policy to the officers of the revenue. They cannot receive anything in the course of official duty except the compensation allowed by law; and they cannot rightfully do any act which is not authorized by law, under color of office. They have no authority to make compromises of any charge or complaint for any violation or alleged violation of the revenue laws. Such authority is alone intrusted to the commissioner of internal revenue, acting with the advice of the secretary of the treasury.

If, therefore, any subordinate revenue officer demands or accepts, or attempts to collect, directly or indirectly, as payment or gift, or otherwise, any sum of money or other thing of value for the compromise of a violation of the revenue laws, he is guilty of a misdemeanor under this clause of the statute. Before you can find the defendant guilty under this count, you must be fully satisfied from the evidence that he agreed to make a compromise as charged, and received in consideration of such agreement some thing of value for *his personal benefit*. You have heard the evidence and the comments of counsel upon this point, and it is your duty to determine whether this clause of the statute, as construed by the court, has been violated by the defendant. If you have any reasonable doubt upon the subject you should give the benefit of that doubt to the defendant. Upon a trial for crime the law presumes the defendant innocent, and that presumption remains as a protection to him until removed by evi-

dence that satisfies a jury, beyond a reasonable doubt, as to his guilt.

In delivering this charge I have carefully endeavored to avoid any expression or intimation of opinion as to the weight of the evidence. You should not in any degree be controlled in your verdict by any conjectures which you may make as to the opinion of the court upon questions of fact. The evidence should alone control you upon such questions, and I believe that you will render an honest and just verdict.