No. 30,305.

FRED J. CHILDRESS, *Appellee*, v. THE LUCKY JEW LEAD AND ZINC COMPANY, *Appellant.*

(8 P. 2d 376.)

Opinion filed March 5, 1932.

*Fred A. Walker,* of Columbus, and *Dick Rice,* of Miami, Okla., for the appellant.

*E. B. Morgan,* of Galena, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is a suit to recover $5,000 for breach of a written contract. Judgment was for plaintiff. Defendant appeals.

Appellant owns a sublease for mining purposes on certain land in Cherokee county, Kansas. Since 1924 it has had contracts with different companies and individuals to operate this property on a

royalty basis. In March, 1929, appellant and appellee entered into such a contract. This contract contained a forfeiture clause, as follows:

"Then second party shall be deemed to have forfeited this contract, and all rights hereunder shall then cease and be at an end and party of the first part shall have the right to the possession of all of said real estate and mill plant and all other property described herein for mining purposes, and second party agrees to peaceably surrender the same to it."

In April appellant deemed appellee guilty of conduct which warranted it in taking advantage of that clause. It gave appellee notice of the forfeiture and demanded possession of the property. Appellee refused to admit the ground for forfeiture and refused to surrender possession. After some negotiations the contract sued on in this case was executed. It is as follows:

"JOPLIN, MISSOURI, May 28, 1930.
"*Lucky Jew Lead and Zinc Company, and M. G. West, Secretary of said Company:*

"You are hereby advised that the undersigned hereby tenders to you a full and complete surrender of all his rights under and by virtue of that certain contract heretofore entered into between the Lucky Jew Lead and Zinc Company and himself, for the operation of that certain lead and zinc mine with concentrating mill and the appurtenances thereunder belonging, . . . on payment to the undersigned of the sum of five thousand dollars ($5,000), and upon the payment of which and compliance with this letter, this surrender is to take effect.

"It has been agreed between the undersigned and M. G. West, secretary of the Lucky Jew Lead and Zinc Company, that the said West is to assume all expenses of pumping and keeping the water from said mine beginning on June 1, 1930, and the acceptance of the surrender herein tendered shall be a full and complete release of all liability on my part for any and all expenses of keeping the water pumped from the mine from June 1, 1930, and from all other liability on my part of whatsoever kind or nature.

"Yours very truly,      F. J. CHILDRESS.
"Accepted by—
"LUCKY JEW LEAD AND ZINC COMPANY,
"By W. C. BOWMAN, *President.*
"Attest: M. G. WEST, *Secretary.*"

It will be seen that the contract is in the form of an offer and acceptance. There was some question in the case about the acceptance of this offer. That question will be dealt with later in this opinion. Upon the execution of this agreement appellant surrendered possession of the premises. Appellant refused payment of the $5,000. This suit followed. The petition set out the contract, alleging com-

pliance with it, and the failure of appellant to pay. It prayed judgment for $5,000. The answer set out the provisions of the operating contract between appellant and appellee, whereby appellant claimed the right to forfeit that contract. It alleged that appellee had no interest in this contract after the service of the forfeiture notice; that if the president and secretary of appellant entered into the contract sued on, they did so without the knowledge of appellant, that they were without authority so to do, and the agreement was null and void. The answer further alleged that the contract sued on was void for want of consideration. There was an allegation in the answer that appellee had carried equipment and machinery away from the mine while he was in possession of it to the amount of $6,800. The answer prayed that appellee take nothing from his suit, and that appellant have judgment against appellee for $6,800.

The reply denied that appellant had taken possession of the lease before the execution of the contract sued on. It further alleged, as follows:

"It is alleged that the president and secretary of the appellant had full management and control of its business and property, and that he in good faith refused to accept or permit a forfeiture of his rights or yield possession of said property and leasehold, and that the appellant, acting by its president and secretary, made claim against him for the property alleged to have been converted by him, which claim he denied and a controversy thus arose between the parties, and all matters in controversy were settled and compromised by reason of the contract sued upon. That said officers accepted and agreed to the same and that the appellant was barred and estopped from denying the authority of the officers to execute the same."

The case was tried to the court. General findings were made and a judgment entered against appellant and in favor of appellee in the amount of $5,000. From that judgment this appeal is taken.

At the outset of the trial the court announced that the burden of proof was on defendant. Appellant complains that this was prejudicial error, which would justify a new trial. Without deciding whether the burden of proof was on appellant, it is plain, we think, that the error, if any, was not prejudicial. We think the facts and circumstances in this case bring it within the rule announced in *McCormick v. Holmes*, 41 Kan. 265, 21 Pac. 108. There this court said:

"It becomes immaterial upon whom the burden of proof rests when all the evidence concerning the transaction inquired into is introduced." (Syl. ¶ 3.)

This rule was reaffirmed in *Quinton v. Kendall,* 122 Kan. 814, 253 Pac. 600. In the case at bar trial was to the court. A full and complete opportunity was given both sides to present their case and at no point is it apparent that appellant suffered from the fact that the burden of proof was placed upon it.

Appellant points out the allegation in the answer that the officers had no authority to sign the contract sued on and that appellant had no knowledge that such a contract had been signed. He argues that for appellant to be bound by the contract one or the other of four conditions must have existed:

First, the president and secretary of appellant must have had express authority to execute the contract.

Second, in the absence of express authority, it must have been a contract made in the ordinary course of business of the corporation, and, therefore, within the implied powers of its officers to execute.

Third, in the absence of express authority and not within the ordinary course of business of the corporation, the corporation with knowledge of its provisions must have ratified it.

Fourth, the authority of its officers to sign the contract must be inferred from the course of dealing between them and the mining company.

Appellant takes up each one of the foregoing conditions and argues from the evidence that none of them existed and hence the court erred in admitting the contract sued on in evidence.

While no specific findings of fact were made, the court made remarks at the close of the testimony, which indicate that it was convinced that the fact that the contract sued on bore the signature of the president and secretary of the company, was *prima facie* evidence that the contract was valid, and it was incumbent on appellant to show that that was not true. This rule is laid down in *Town Co. v. Swigart,* 43 Kan. 292, 23 Pac. 569. There the court said:

"Where the president and secretary of a corporation execute a contract in behalf of the company, which is regular on its face and not shown to be outside of the regular business of the corporation, it is *prima facie* evidence that it was executed with authority, and those who deny the authority take upon themselves the burden of establishing their claim." (Syl. ¶ 1.)

That rule has been followed many times in Kansas. (See, also, 14a C. J. 400.)

In *Solomon Rld. Co. v. Jones,* 30 Kan. 601, this court said:

"Where a president of a corporation appears as the active agent in the execution of any work, parties employed by him have a right to assume that he is acting for the corporation, and that his acts in that respect are its acts, and binding upon it." (Syl. ¶ 2.)

See, also, 14a C. J. 352. The court in weighing the evidence in this case and reaching a conclusion as to the facts no doubt considered all the circumstances. It was admitted that the president and secretary both signed the contract sued on. There is ample evidence to sustain a conclusion that the contract was in the ordinary course of business of the corporation. In fact, it appears from the record that appellant had never done anything with this property but lease it under operating contracts similar to the one under which appellee was operating. How can it be said, then, that a contract securing possession of the property from an undesirable contract holder was not the ordinary business of the corporation? There is also ample evidence to sustain a finding of fact by the court that the corporation had ratified the acts of the president and secretary. It had taken possession of the premises. This was the benefit it was to receive from the contract. How can it be heard to say that it can enjoy the fruits of the contract and still deny the authority of its officers to enter into it? There is also sufficient evidence to sustain a finding of fact that the course of dealing between the officers and the corporation justified the inference that the officers had authority to execute the contract sued on. The secretary was on the ground where the mine was located every day. Mr. Bowman, the president, testified:

"Q. Has the board of directors of the company ever repudiated anything which you and Mr. West and the other members of the board here did? A. Never.

"Q. As a matter of fact, hasn't the board of directors left the business matters to your good judgment, Mr. Bowman? A. Practically so; yes."

This is not disputed in the evidence.

Appellant argues that there is no evidence that appellee ever gave notice to appellant that the contract sued on had been accepted by him. The contract is drawn in the form of an offer from appellee to appellant and an acceptance by appellant. What happened was that an offer was submitted to appellant by appellee and taken to Kansas City by West, the secretary of the corporation, to be submitted to the other officers of the company. This offer was not satisfactory to the officers and another was drawn still in the form of an

offer from appellee to appellant. It was accepted by the officers of appellant and then sent to Cherokee county for the signatures of appellee. The evidence of West is that he gave the two copies to a man to take them to appellee for his signature. He says he never saw either copy again. The man says he took these two copies and handed them to appellee in an envelope and appellee went into an office and came out in a minute and handed him an envelope, which he delivered to West. Appellee testified that he signed the contract and handed one copy to the man to be delivered to West. The trial court evidently believed appellee. We cannot weigh evidence in this court.

Appellant urges that the contract sued on was void for want of consideration. The consideration claimed by appellee is the surrender of possession of the lease. Appellant argues that it was entitled to possession of the lease, and appellee was not entitled to it. Hence, the surrender of possession was not the foregoing of anything to which appellee was entitled and would not constitute consideration for a contract. We have seen the forfeiture clause of the operating contract. The right of appellant to possession under that clause depended upon the determination of certain questions of fact and the conclusions of law that would be drawn therefrom. Of such stuff are lawsuits made. We pass on problems like that every month. Evidently appellant preferred to pay appellee $5,000 rather than to have a lawsuit. Evidently appellee preferred to have the $5,000 rather than the lease or a lawsuit. Considerations like this have been held to support contracts in this state. (See *W. F. Dendy v. Russell*, 67 Kan. 721, 74 Pac. 248; *Reed v. Kansas Postal Telegraph Co.*, 125 Kan. 603, 264 Pac. 1065; *Shrader v. McDaniel*, 106 Kan. 755, 186 Pac. 954.)

Appellant offered evidence by which it sought to sustain its contention that it was entitled to a forfeiture of the operating contract and to possession of the leasehold thereunder. This evidence was refused by the trial court. It is urged that this is error. This trial was not the place for that evidence. Appellant had compromised the right of action where that evidence would have been admissible. As to the counterclaim of appellant against appellee, what has been said about the contract sued on settles that. This right of action, if any existed, was settled by the execution of the contract sued on.

The judgment of the trial court is affirmed.