[Civ. No. 5065. Third Appellate District.—October 3, 1934.]

E. E. BAKER, Respondent, v. JAMES F. PECK, Appellant.

Andrew R. Schottky and Elizabeth M. Maxwell for Appellant.

F. M. Ostrander and Hugh H. Griswold for Respondent.

PULLEN, P. J.—This is an action brought by plaintiff against defendant for recovery of compensatory and punitive damages resulting from a battery committed by defendant upon plaintiff on May 15, 1933, in the city of Merced. The plaintiff in the action alleges damages of $5,000 for an assault with premeditation and malice, and for exemplary damages of $50,000.

The answer of defendant admitted the striking of plaintiff, but alleged that no damage was done to plaintiff·thereby and further alleged that he struck in self-defense. A jury was impaneled and a general verdict was returned in favor of plaintiff for $6,500. This is an appeal from the judgment entered upon such verdict, and from the order denying a motion for a new trial.

It is urged for reversal that error was committed in regard to the admission of certain testimony and in the giving and refusal to give certain instructions; that the attorney for plaintiff, as well as the jury, were guilty of misconduct and that the verdict was excessive. For a proper understanding of the issues, it will be necessary to set forth the salient facts.

Defendant is an attorney who maintains his offices in San Francisco and also owns and operates considerable ranch

property in the county of Merced. Plaintiff was employed either by defendant or one of his tenants to do certain tractor work on one of the ranches. This work was done some time in the month of February, 1933. Plaintiff not having been paid for this work, called on defendant in his office in San Francisco about April 15th. Defendant at that time told plaintiff he had not seen the work and would not pay until he had himself examined it. After some acrimonious discussion defendant agreed to meet plaintiff at the ranch a few days later. Accordingly the parties met and the work was found satisfactory and $381 was agreed upon. Defendant then promised to mail plaintiff a check for that amount in three or four days. This was not done. After an interval of perhaps three weeks plaintiff learned that defendant was in Merced, and on the day of the encounter hereinafter referred to, plaintiff went to Merced and met defendant at the courthouse and renewed his request for the payment of the plowing. Defendant replied that he was then engaged in the trial of a case and could not discuss other matters until the trial was finished. Plaintiff testified, which defendant denies, that defendant then suggested that they meet at the hotel during the noon intermission. In any event plaintiff, accompanied by his wife and his business associate, Mr. Blair, went to the hotel. He first inquired at the desk for Mr. Peck and was connected with his room by telephone. Plaintiff, Mr. Blair and Mrs. Baker waited until Mr. Peck came down and until he had finished a conversation with others in the lobby. Mr. Baker then approached him and said that the oil company was crowding him for payment and was threatening suit unless the account was met, and reminded defendant of his promise to pay. This promise defendant denied, and after some argument called plaintiff a ''damn liar'' and struck him twice upon the jaw, followed by two more to the face, whereupon a friend intervened and plaintiff left the lobby. He then visited a physician, who testified he found some redness and swelling of the face and jaw and certain teeth noticeably loosened. Plaintiff returned to the doctor's office four days later and at that time there was considerable tenderness in the neck and throat over the larynx. On a subsequent visit on May 24th, the teeth had tightened, but the neck was still tender and the larynx swollen. Plaintiff

had also during the time suffered headaches and bleeding of the nose, and also, so he testified, suffered pain both in the neck and in his throat.

■ Defendant cites as error the admission of evidence of the meeting in San Francisco on April 15th, claiming the same to be immaterial and tended to distract the attention of the jury from the real issues, and resulted in prejudicing defendant in the eyes of the jury. The evidence was properly received, as tending to show the attitude and state of mind toward plaintiff. One of the issues before the jury was whether the defendant struck plaintiff with malice. Defendant denied the elements of malice and it was therefore proper for plaintiff to show any act or statement of defendant that might bear upon that issue. ■ Furthermore, defendant denied that he was indebted to plaintiff and on cross-examination plaintiff was entitled to contradict that testimony if possible, thereby impeaching the credibility of the witness. Certain objections, occupying many pages in the brief of defendant, were made to the instructions to the jury. The instructions are in some instances quite long and no useful purpose would be served by setting them forth here. We have examined them carefully, but can find no errors therein. The court seems to have fully and fairly stated the law as applicable to the case.

■ It is then claimed that the attorney for plaintiff was guilty of misconduct in that in his opening statement he narrated the performance of the work done by plaintiff upon the ranches of defendant; that plaintiff had endeavored to collect the money due therefor and the incidents attendant upon his visit to the offices of defendant in San Francisco and the reply by defendant to the demands of plaintiff. We can see nothing particularly objectionable thereto and must assume counsel did not, either, for at the time the statement was made, no objection was interposed thereto. Such an objection before the trial court is a prerequisite to a basis of complaint on appeal. If counsel felt that plaintiff was exceeding his bounds he should have called that fact to the attention of the court that the improper remarks could have been stricken out and the jury admonished in regard thereto.

■ Appellant strongly urges also that the evidence was insufficient to sustain the contention of plaintiff that the

acts were done maliciously and with the intent of oppressing plaintiff. The complaint reads that "defendant . . . maliciously and intending thereby to oppress plaintiff, violently struck plaintiff . . . " It will be observed that plaintiff bases his claim for punitive damages not alone upon the presence of malice, but oppression as well. Section 3294 of the Civil Code sets forth in what cases exemplary damages are allowed. Oppression is defined by the Standard Dictionary as "An act of subjecting to cruel and unjust hardship," and in 46 Corpus Juris, page 1121, as "an act of . . . domination". To show the state of mind and attitude of defendant toward plaintiff, plaintiff introduced evidence of prior meetings and conversations between plaintiff and defendant on the subject of dispute at the time of the assault in the hotel. At one meeting in response to a remark of plaintiff defendant told him to be god damned careful of what he said or he would go down quicker than he came up. Defendant, in relating this incident, said plaintiff "then came off his perch".

At the time of the encounter at the hotel plaintiff said to defendant, "you tried to knock me out, didn't you? If I had not been a good man you would have . . . ," to which defendant replied, "It is too god damned bad that I didn't knock you out, you would be a better man if I had," and defendant then struck plaintiff two more blows.

In regard to the actual encounter defendant said: " . . . Every blow I struck was made as forcibly as I could make it," and "I tried to knock him down but I was not successful," and "I tried to hit him as hard as I could." All of which indicates a sufficient intention to maliciously oppress plaintiff. An examination of the record disproves the claim of defendant that he struck in self-defense. No testimony is offered that plaintiff made any move to threaten or strike defendant. During the encounter he stood with his hands at his sides and made no move of any kind toward defendant.

Another point stressed by appellant is that the jury were prejudiced against defendant and were guilty of misconduct. To establish such misconduct appellant filed affidavits, setting forth, among other things, that on account of his connection with the organization of the Merced Irrigation District, within the boundaries of which most,

if not all, of the jurors resided, he, affiant, was charged with many malevolent purposes and blamed for the financial loss that many of those in the district had sustained; and as an indication of that feeling, affiant recites that at one time he owned a dwelling house in the city of Merced that took fire, and when it was discovered whose property was afire, the fire department of the city made no effort to extinguish the flames and the house was destroyed. It was also averred extraneous matters were called to the attention of the jurors by counsel for plaintiff, all of which would make it impossible for a fair and impartial trial. It was also set up by affidavit of defendant that certain sheets of paper, with writing and figures thereon in the handwriting of a member of the jury, were found in the jury room after they had returned their verdict. These figures were claimed to show the jury included many improper items to make up the total of their verdict. It was also charged that counsel pictured defendant as a wealthy individual who refused to pay his just account to a poor farmer, thereby making a class appeal and branding the conduct of appellant as heartless.

It will be observed, first, in answer to the foregoing, that appellant did not move for a change of venue, and if the feeling of the people of Merced County were so wrought against affiant such fact must have been known to defendant and to his local counsel.

Secondly: No challenge was interposed to the panel when returned into court.

Thirdly: There was no examination of the jurors upon their *voir dire,* except generally by the court, and no requests were made by defendant of the court, nor did he himself, prosecute the inquiry as to any feeling of prejudice or bias on the part of the individual venireman toward him.

Fourthly: No challenges were interposed to the jurors, appellant accepting the first twelve jurors summoned to the box.

Also no objection was made to the trial court of the argument of counsel, which, of course, should have been if the comments of counsel were objectionable.

Lastly, the matters set forth in the affidavits in regard to the memoranda found in the jury room are not

matters this court can consider in the impeachment of the verdict of a jury. (*Fererira* v. *Silvey*, 38 Cal. App. 346 [176 Pac. 371]; *Siemsen* v. *Oakland etc. Ry. Co.*, 134 Cal. 494 [66 Pac. 672]; 20 Cal. Jur. 61, 62.)

This brings us to the final point urged for reversal, namely, that the verdict of the jury was excessive and the result of passion and prejudice. Such a question is in the first instance addressed to the trial court upon the motion for a new trial. That court had the opportunity of observing what influence, if any, may have swayed the jury, and as said in the case of *Sherwood* v. *Jackson*, 126 Cal. App. 441 [14 Pac. (2d) 861]:

"Unless we (the reviewing court) are able to say that the award of damages made by the jury and sustained by the trial court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, this court may not exercise the power of revision." (*Kelley* v. *Hodge Transp. System*, 197 Cal. 598 [242 Pac. 76].)

Accepting the testimony offered upon behalf of plaintiff as true, which apparently the jury did, the record discloses that plaintiff suffered as a result of the blows by defendant, a loosening of the left upper molars and the left upper and lower bicuspids, a soreness and swelling of the jaw and a swelling and tenderness over the larynx, together with bleeding of the nose and headache the following day. Plaintiff and his wife also testified that for two or three weeks following the encounter he did no work and complained of not feeling well and being groggy. During this time he did not plow any crops, although they were awaiting his attention. He also had difficulty in swallowing his food and was compelled to eat soft foods during that time. He made three visits to his doctor's office for which he paid a fee of $12.

The foregoing constitutes the basis for an award for compensatory damage. The verdict returned by the jury was a general verdict of $6,500 and it is impossible to ascertain what allowance was made by the jury for compensatory and what amount for exemplary damage, but appellant

not having requested a segregation, cannot now be heard to complain of that fact. The jury were fully instructed, however, on the question of damage, both exemplary and compensatory, and we must assume that they gave heed thereto. However, in view of the extent of the actual outlay by plaintiff, the somewhat general enumeration of his injuries sustained, and having in mind that the punitive damages must be reasonable in proportion to the compensatory damage, we believe the amount awarded by the jury is in some degree disproportionate.

It is therefore the order of this court that the judgment be reversed and a new trial granted unless plaintiff, within fifteen days from the date of the filing hereof, shall in writing, remit all of the judgment in excess of $3,250, and if plaintiff shall remit the sum of $3,250 from the judgment within fifteen days from the date of the filing hereof, then and in that event, the order denying the motion for a new trial shall be sustained and the judgment in the sum of $3,250 shall be affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1934.