(597 P.2d 682)

No. 50,046

GARRETT YOUNG, *Appellant,* v. ROBERT D. HECHT, GEORGE A. SCOTT, and JACK A. QUINLAN, *Appellees.*

Petition for review denied September 11, 1979.

Opinion filed July 13, 1979.

*Fred W. Phelps, Jr.,* of Fred W. Phelps—Chartered, of Topeka, for the appellant.

*Thomas L. Theis* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for the appellees.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SPENCER, J.: This is an appeal from summary judgment entered in favor of defendants. The sole issue is whether defendants are entitled to judgment as a matter of law.

Plaintiff's theories for recovery of damages, both actual and punitive, are predicated on fraud, breach of contract, negligence, outrageous conduct, oppression, intentional infliction of emotional distress, and violation of DR 7-104(A) of the Code of Professional Responsibility on the part of defendant Hecht. The other defendants are partners with Hecht in the general practice of law.

At the outset, we note the rules relating to the granting and appellate review of summary judgments. K.S.A. 60-256(c) provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As stated in *Mildfelt v. Lair,* 221 Kan. 557, 559, 561 P.2d 805 (1977):

"Summary judgment should not be entered where there are disputed issues of material fact. [Citations omitted.]

"Where the sole question presented is one of law, a final determination may be had on a motion for summary judgment. [Citation omitted.] A motion for summary judgment should be sustained only where there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. [Citation omitted.]

"In considering a motion for summary judgment, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. [Citations omitted.] Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of issues of fact, a motion for summary judgment will not lie. [Citations omitted.]

"An appellate court should read the record in the light most favorable to the party who defended against the motion for summary judgment. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. [Citations omitted.]"

Accordingly, in considering the matter now before us, we accept the plaintiff's version of the facts as true.

In March, 1974, plaintiff was in the United States Army and stationed at Fort Riley. His wife had employed defendant Hecht as her attorney and had sued for a decree of separate maintenance in the District Court of Shawnee County. On March 19, after

having been served with contempt papers in the separate maintenance action, plaintiff consulted an attorney, upon whose advice he went to see Hecht later that day. During the course of their meeting, plaintiff informed Hecht that he desired a divorce rather than separate maintenance and that he wanted Hecht to represent both him and his wife in that proceeding. Hecht did not state that he would represent plaintiff, nor did he advise plaintiff to seek independent legal counsel. However, he did tell plaintiff that he would take no further action in the pending case until he had talked with his client to learn her wishes regarding divorce, and had conveyed those wishes to plaintiff. Nothing more occurred until April 4 when plaintiff was served with an alias citation for contempt. Because of the alias citation, plaintiff sought and retained his present counsel on April 22, who on the following day filed answer in the separate maintenance action only to learn on April 24 that default judgment had been entered against plaintiff on April 22. Plaintiff immediately moved to vacate that judgment, and on May 3 his motion was sustained on the grounds of mistake and inadvertence.

By letter dated April 23, postmarked April 24, and received by plaintiff on April 25, Hecht notified plaintiff that default judgment had been entered against him and explained the terms of that judgment. The letter also stated that failure to abide by the court order could result in plaintiff being "hauled into Court with the possibility of incarceration in the county jail." The letter reminded plaintiff of the pending contempt hearing and informed him that compliance with the court order would result in dismissal of that proceeding; however, if there was no compliance by the date set for hearing, that proceeding would continue. The letter advised plaintiff to contact Hecht if he had any questions.

Upon receipt of the letter, plaintiff did make contact with Hecht by telephone and the terms of the default judgment were discussed. Plaintiff did not then inform Hecht that he was represented by counsel, but now takes the position that Hecht was aware at the time of the telephone conversation that plaintiff was so represented.

On appeal, plaintiff argues that there are factual disputes between the parties and that summary judgment should not have been entered. The trial judge, in a well-reasoned and detailed analysis of this controversy, accepted plaintiff's version of the

disputed facts and the inferences to be drawn therefrom and found, on each of plaintiff's theories, that the facts did not support a cause of action. Where the underlying facts do not justify reaching the conclusion contended for, the matter can be determined as a matter of law. See *Goff v. American Savings Association,* 1 Kan. App. 2d 75, 561 P.2d 897 (1977).

Plaintiff contends that a contract existed between Hecht and himself whereby Hecht agreed to represent plaintiff and to take no action in the pending case without first notifying plaintiff. The record contains nothing to indicate a contract between plaintiff and Hecht for the rendering of legal services. Plaintiff in fact agreed that Fred Phelps, his present attorney, was the only attorney he ever had in the case. However, whether the promise attributed to Hecht created a contract to that limited extent is another matter. It is argued that such a contract was created and that plaintiff promised to abide by the agreement as evidenced by the fact that he did not seek independent legal counsel until April 22. It is argued that such was supported by consideration (a promise for a promise, *French v. French,* 161 Kan. 327, 167 P.2d 305 [1946]; or forbearance, *Childress v. Lucky Jew Lead & Zinc Co.,* 134 Kan. 743, 8 P.2d 376 [1932]), and contained mutuality or was excused from the requirement of mutuality since fully performed by him (*French v. French,* 161 Kan. 327; *Kilmer v. Victory Sand & Stone Co.,* 153 Kan. 381, 110 P.2d 798 [1941]; *Nelson v. Schippel,* 143 Kan. 546, 56 P.2d 469 [1936]). In the alternative, plaintiff argues the doctrine of promissory estoppel should be applied to validate the contract. *Kirkpatrick v. Seneca National Bank,* 213 Kan. 61, 515 P.2d 781 (1973).

The record, however, contains nothing which would indicate that Hecht's statement was anything other than a naked promise. To make such enforceable as a contract, the doctrine of promissory estoppel must be applicable.

"The doctrine of promissory estoppel will be invoked where the evidence shows that a promise was made under circumstances where the promisor should reasonably expect that the promise would be relied upon by the promisee and that the promisee acted reasonably in relying upon the promise and further if refusal to apply the doctrine would result in injustice otherwise unavoidable." *Kirkpatrick v. Seneca National Bank,* 213 Kan. 61, Syl. ¶ 2.

Estoppel is not applicable in this case. Upon receipt of the alias citation for contempt on April 4, plaintiff was well aware that he could not then reasonably rely on the alleged agreement, and it

was because of the alias citation that he employed his present counsel. Any injustice occasioned by the default judgment was rectified when that judgment was vacated.

Plaintiff argues the existence of a cause of action in negligence predicated upon the existence of an attorney-client relationship. That relationship can be created only by a contract of employment, express or implied. *Caldwell v. Bigger*, 76 Kan. 49, 90 Pac. 1095 (1907); *Alexander v. Russo*, 1 Kan. App. 2d 546, 571 P.2d 350 (1977). Plaintiff admits there is no express contract of employment and the evidence does not support an implied contract, for it was obvious that defendants represented the wife and could not in any event represent plaintiff without having learned her wishes. An attorney cannot, in the absence of special circumstances, be held liable for the consequences of his professional negligence to anyone other than his client. See generally Annot., 45 A.L.R.3d 1181.

Plaintiff presents as two separate causes of action the tort of outrage and the tort of intentional infliction of emotional distress. Kansas first recognized the tort of outrage in *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974). In discussing this tort in *Dawson* and subsequent cases (*Wiehe v. Kukal*, 225 Kan. 478, 592 P.2d 860 [1979]; *Dotson v. McLaughlin*, 216 Kan. 201, 531 P.2d 1 [1975]; *Bradshaw v. Swagerty*, 1 Kan. App. 2d 213, 563 P.2d 511 [1977]), our appellate courts have relied heavily upon Restatement (Second) of Torts § 46. The gravamen of the tort is the intentional or reckless causing of severe emotional distress by extreme or outrageous conduct. In order for the conduct to be considered reckless, the actor must have prior knowledge of facts indicating a high degree of risk of harm to another and then act without regard to that risk. *Wiehe v. Kukal*, 225 Kan. at 484. There is nothing in the record from which it can be inferred that Hecht intended to cause emotional distress; nor is there any showing that he was aware of any facts which would indicate prior knowledge of likelihood of harm to plaintiff.

Plaintiff argues a cause of action which he calls "oppression." The authorities relied upon indicate that an allegation of oppression will support, upon proof, an award of punitive damages (*Kendall Yacht Corp. v. United California Bank*, 50 Cal. App. 3d 949, 123 Cal. Rptr. 848 [1975]; *Roth v. Shell Oil Co.*, 185 Cal. App. 2d 676, 8 Cal. Rptr. 514 [1960]; *Baker v. Peck*, 1 Cal. App.

2d 231, 36 P.2d 404 [1934]; *Yarbrough v. Brookins,* 294 S.W. 900 [Tex. Civ. App. 1927]), or that oppression can be a valid defense to certain contract actions (*Matter of Baruch,* 205 Misc. 1122, 132 N.Y.S.2d 402 [1954]; *Domus Realty Corporation v. 3440 Realty Co., Inc.,* 179 Misc. 749, 40 N.Y.S.2d 69 [1943]), or that oppression can be a part of the crime of extortion (*United States v. Deaver,* 14 Fed. 595 [W.D.N.C. 1882]). If plaintiff's "cause of action" is but a theory for recovery of punitive damages, then it must appear that he is entitled to go to the jury on some cause which would support a verdict of actual damages, without which punitive damages are not recoverable. *Webber v. Patton,* 221 Kan. 79, 558 P.2d 130 (1976); *Dold v. Sherow,* 220 Kan. 350, 552 P.2d 945 (1976).

The trial court concluded, and we agree, that plaintiff's theory of recovery premised on a violation of DR 7-104(A), 224 Kan. cv, does not alone constitute a cause of action, even though it may be assumed that such a violation occurred. See *Hill v. Willmott,* 561 S.W.2d 331 (Ky. App. 1978).

Plaintiff argues that there exists a submissible case in fraud. This theory is predicated upon the promise of Hecht to take no action in the separate maintenance suit without consulting plaintiff, it being the contention that Hecht never intended to abide by the obligations of that promise. This species of fraud was discussed in *Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 360 P.2d 23 (1961). In order to show that there was fraudulent intent, there must be more than mere nonperformance on the part of defendant Hecht. Other circumstances of a substantial character must exist which would support an inference of wrongful intent at the time of making the representation. *Galotti v. United States Trust Co.,* 335 Mass. 496, 140 N.E.2d 449 (1957); *Conzelmann v. N.W.P.&D. Prod. Co.,* 190 Or. 332, 225 P.2d 757 (1950). A potential benefit accruing to defendant upon nonperformance, which benefit is known at the time the promise is made, may justify an inference that compliance with the promise was never intended. *Dubois v. Atlantic Corp.,* 322 Mass. 512, 78 N.E.2d 185 (1948). Nothing exists in this record to indicate any potential benefit which might accrue to Hecht by reason of his nonperformance of the agreement of which he could have known at the time it was made. Nor is there anything in the record to indicate that the promise was made to induce plaintiff not to seek

legal counsel or otherwise to act on his own behalf. The burden of proving fraud is by a preponderance of the evidence, but that evidence must be clear, convincing, and satisfactory. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 596 P.2d 816 (1979). In any event, if the recipient of a fraudulent representation has information which would serve as a danger signal to a person of ordinary intelligence and experience, he is not justified in relying upon that representation. Where fraud is alleged and the facts are undisputed and only one reasonable conclusion can be reached, or where there is an entire failure of proof, the trial court may apply the principles of law to the facts and grant summary judgment. *Goff v. American Savings Association,* 1 Kan. App. 2d 75.

The trial judge noted that plaintiff was not exactly a stranger to the civil process of which he was a participant. The record reveals that plaintiff had previously been divorced; that upon receipt of the citation for contempt on March 19, he immediately sought legal counsel; and again did so upon receipt of the alias citation on April 4, some eighteen days prior to the entry of the default judgment, when it became obvious that further action had .been taken.

Read in the light most favorable to plaintiff, we find from the record that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.

Affirmed.