ANDALE EQUIPMENT, INC., Plaintiff,

v.

DEERE & COMPANY and John Deere Company, Defendants.

No. 96–1142–JTM.

United States District Court, D. Kansas.

Nov. 19, 1997.

Brian G. Grace, Gilbert L. Guthrie, Grace, Unruh & Pratt. L.C., Wichita, KS, for Plaintiff.

Daniel M. Dibble, Timothy K. McNamara, David T. M. Powell, Lathrop & Gage L.C., Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

The present action involves a claim by Andale Equipment, Inc., against defendant Deere & Company. Andale claims Deere breached a contract and committed fraud in connection with an agreement to relocate another Deere dealership in the Wichita area. Deere has moved for summary judgment on Deere's fraud claim.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant proba-

tive evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Deere is a Delaware corporation which makes and sells agricultural equipment, as well as both commercial and consumer lawn and garden equipment. It is a successor by merger to John Deere Company, and sometimes does business in that name. Deere sells through independent dealerships which may carry one or more of its product lines. Agricultural equipment dealers also selling lawn and garden products are known as "combination dealerships."

From March 1989 to January, 1996, Andale Equipment, Inc., a Kansas corporation, owned and operated a lawn and grounds dealership on the west side of Wichita, Kansas known as Wichita Outdoor Power. This company provided sales and service for both consumer lawn and grounds products, but did not sell or service agricultural equipment.

In addition to Wichita Outdoor Power, there is another John Deere dealership on the west side of Wichita, Western Implement Co. Western has been a Deere dealership for more than 40 or 50 years. A combination dealership that sells agricultural and consumer lawn and garden equipment, it started in downtown Wichita some years ago and had an established presence in the market. It had an experienced sales staff and service personnel, and had a loyal clientele. Prior to 1991, Western also sold commercial lawn and grounds equipment.

Deere owned and operated Western as a "company store" until December, 1988, when the personal property and inventory of the store was sold to an independent company, Western Implement Co., Inc. Deere did not sell the property or building where Western was located, but gave the new dealer a three-year lease which began in November, 1988, followed by two one-year extensions. This original lease ended November 30, 1993.

Andale bought Wichita Outdoor Power from the previous owners in March 1989. Deere approved the sale. Before the sale, Deere told Andale that it was its long range plan to have Western move out of Wichita. The fundamental evidentiary dispute is whether, in connection with this sale, Deere ever represented to Andale, and its owner John Dugan, that Deere would move Western by a certain date. Deere states that no one from Deere ever told Andale either orally or in writing that Western would relocate by a specific date. In contrast, Andale states that Dugan was explicitly told that Western would be moved out of the west side of Wichita. Dugan states he was given this representation in connection with his purchase of Western Outdoor Power, his agreement to move Western Outdoor Power to a new building, and his agreement to buy another Deere dealership in Kingman, Kansas.

Early in 1990, Deere asked Wichita Outdoor Power to move into a better building at a new location to enhance its market share. To help induce the move, Deere promised Andale it would terminate Western's contract for commercial lawn and grounds equipment when Wichita Outdoor Power's new location became operational, thereby making Wichita Outdoor Power the sole dealer on the west side for commercial lawn and grounds equipment.

Andale agreed to move Wichita Outdoor Power to a new location. Wichita Outdoor Power did not buy the property or build the building into which it moved. John Dugan did build the building, and gave Wichita Outdoor Power an oral lease. In addition, An-

dale did incur some expense in connection with the relocation.

Andale moved Wichita Outdoor Power into its new facility in April of 1991. As it had promised, Deere terminated Western's contract to sell commercial lawn and grounds equipment on April 12, 1991. However, Western continued to sell agricultural equipment and consumer lawn and garden equipment. Western did not move in November of 1993, and today remains in the same location as an agricultural and consumer lawn and garden equipment dealer.

Andale bought the Kingman Store in May of 1990. In making arrangement for the sale, Andale dealt with Max Hansen, a Deere division marketing manager. On April 9, 1990, Deere met with John Dugan to explain its position with respect to the planned relocation of Western. On April 20, 1990 Hansen wrote to Andale to summarize the results of this meeting.

> This letter is intended to confirm the major issue discussed during your recent meeting in Kansas City regarding our plans for long-term dealer representation in Wichita, Kansas. You were advised during the meeting that we had a lease commitment with the owners of Western Implement Company. The lease arrangement involves a three year term and two one-year renewable options. At the end of this potential five year commitment, you were advised that we would not have a John Deere agricultural dealer in those facilities or located in Wichita, Kansas.
>
> You mentioned to me that you have an interest in the facility we are currently leasing. I would ask that you handle those real estate inquiries, keeping in mind discussions you participated in here at the branch.
>
> I hope you better understand our long-term plan as it relates to the Wichita trade area time table within which we must operate. Additionally, this information has been provided so you can better plan your future actions. Please treat it confidentially.

(Def. Exh. G).

Dugan concluded, correctly, from what Deere personnel told him that Western's

five-year lease began in 1988, when Deere sold Western to the new owners.

As evidence of an alleged intent not to perform its contractual promise to relocate Western, Andale has identified the following facts: (1) Western did not relocate and Deere in fact extended Western's original lease after November 1993; (2) statements to Dugan by Deere's general manager Charles Gause that Andale should "get along" with Western; (3) Hansen told Dugan before his April 20 letter that if Andale was going to get Western relocated, it should "get it in writing;" (4) the owner of Western told Dugan in February 1993 that he had no plans to move; (5) Deere subsequently attempted to deny any agreement with Andale; and (6) the decisions regarding Western were made by Deere officers in Kansas City, and that these officials' primary responsibility was agricultural equipment sales rather than lawn equipment.

Andale filed its complaint on April 12, 1996.

### Conclusions of Law

As noted earlier, Deere has moved for summary judgment only on Andale's fraud claim. Andale's claim for breach of contract is not addressed. Deere's motion is based on two grounds. First, it contends the present action, filed April 12, 1996, is untimely under the applicable statute of limitations, K.S.A. 60–513(3). Second, Deere argues the present matter reflects purely a contract claim, and that plaintiff has failed to present any evidence of an intent to defraud.

This second argument is premised on the general principle under Kansas law that failure to perform a specific promise is not proof in itself that fraud has occurred. "In order to show that there was fraudulent intent, there must be more than mere nonperformance on the part of defendant." *Young v. Hecht*, 3 Kan.App.2d 510, 515, 597 P.2d 682, 688 (1979). *See also Whitten v. Farmland Industries*, 759 F.Supp. 1522, 1542 (D.Kan.1991). The plaintiff must show this wrongful intent existed at the time the representation was made. *Young*, 597 P.2d at 688. To defeat the motion for summary judgment,

the burden is on the plaintiff to prove by a preponderance of the evidence, which is of a clear and convincing nature, that the elements of fraud are present. *All West Pet Supply v. Hill's Pet Products Division,* 840 F.Supp. 1426, 1432 (D.Kan.1993).

In its response to the motion for summary judgment, Andale argues first that the statute of limitations was tolled by continuing assurances of performance by Deere, and second that proof of an intent to defraud exists in Deere's repudiation of the agreement. In support of this second argument, Andale notes decisions from other jurisdiction holding that nonperformance of a contract may constitute proof of a fraudulent intent where the promisor repudiates the existence of any agreement. *See Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex.1971); *New Process Steel v. Steel Corp. of Texas,* 703 S.W.2d 209 (Tex.App.1985). The Reporter's Note to the Second Restatement of Torts has adopted a similar view, where the repudiation occurs shortly after the agreement and without any intervening circumstances. *Restatement (Second) of Torts,* § 530, Appendix, Rep. Note at 140.

■ As indicated earlier, the plaintiff may have presented evidence supporting a triable case on the question of fraudulent intent. Andale has provided facts from which a reasonable fact finder could conclude that there was an agreement to relocate Western by a date certain, but that a number of agents of Deere repudiated any such agreement soon after it was made. However, Andale has failed to demonstrate such an action would be timely.

■ Failure to perform a specific promise is generally sufficient to put the promisee on notice of promissory fraud and begin the running of the statute of limitations. *City of Ulysses v. Neidert,* 196 Kan. 169, 173, 409 P.2d 800, 803 (1966). The statute of limitations for fraud begins to run when the injured party has actual knowledge of the fraud or when the fraud could have been discovered with reasonable diligence. *Wolf v. Brungardt,* 215 Kan. 272, 524 P.2d 726 (1974). In *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 63, 643 P.2d 100, 108

(1982), the Kansas Supreme Court repeated this rule, stating the rule

> does, however, imply actual knowledge, not mere suspicion of wrong. Further, even though his suspicions might have been aroused a party may be lulled into confidence by certain representations and forego any further investigation.

Turning to the actual facts offered by Deere, the court finds that evidence to support Andale's tolling argument is insufficient. In its response, Andale cites a number of communications between the parties (see Exh's 33, 37, 44, and 48). On June 22, 1993, Deere's Marketing Manager W.T. Mosier wrote to Dugan that Deere's intentions "have not changed" and that "[m]atters of timing and location are confidential." (Exh. No. 33). Andale also cites Mosier's letter from the following year which also repeats the statement that Deere's intentions had not changed. (Exh. No. 37). Subsequent communications in 1994 indicate Deere continued to explore the possibility of relocating Western at that time.

The important point about all of these alleged lulling assurances is that none of them detract from or are inconsistent with Deere's earlier explicit repudiation of any obligation to relocate Western by November 1993. By November 30, 1993, Andale knew not only that Western had not been relocated, it also knew Deere had repudiated the key element of the contract—that relocation had to be to a certain place and by a certain date.

The documents relied upon by Andale in which Deere states that it had not changed its mind cannot constitute lulling assurances. While Deere may have stated "our intentions regarding the Wichita area have not changed" (Exh. 33), it also clearly informed Andale this meant there was no obligation to relocate the other dealer by a date certain. (See Exh. 60). Thus, for example, in Mosier's letter of June 3, 1994, he wrote not only that Deere had not changed its mind, it explicitly detailed Deere's understanding of the parties' obligations or lack thereof:

> First, discussions with you regarding the Wichita area have been lawn and grounds care related only.

Second, you have never been assured that you would have no competition in Wichita in selling any John Deere products. Intrabrand competition exists everywhere, there are no exclusive trade areas.

Third, John Deere never made any representations to induce you to build your present facilities. We attempted to answer questions you asked to provide you with some indication of future plans. As Max Hansen's 20 April 1990 letter states, our lease commitment to Western Implement was a ".... *potential five year commitment.*"

Fourth, John Deere company has never made a commitment to get *"Western Implement out of the Wichita trade area."*

(Exh. 37) (emphasis in original).

In sum, the very documents Andale relies on to show the merits of its fraud claim decisively undermine its tolling argument. By 1992, well before the November 1993 end of the Western lease, Deere had effectively repudiated any obligation to move Western by a date certain. Indeed, by that time Andale was even told Western's move was "none of your business."

In its response to the summary judgment motions, Andale cites several decisions finding tolling based upon lulling assurances by a defendant. In each of those cases, however, the plaintiff's concern was apparently prompted by nonperformance, and those concerns were allayed by assurances which were believed by the plaintiff. The present case is substantially different. Here, the defendant had not only failed to perform the agreement, it had explicitly denied the existence of any obligation to relocate Western. That Deere continued to explore a potential relocation does not toll the statute of limitations given its prior unequivocal repudiation of any suggestion that it was *obliged* to undertake a successful relocation. Moreover, there is no evidence Andale was in fact "lulled" by the subsequent communications.

 To the contrary, on April 20, 1992, the plaintiff wrote to Deere to summarize the relations between the parties. After noting the "none of your business" comments, the letter concludes: *"And so it is evident to see*

*that the Wichita Ag store (unless already in progress) will not be relocated at the end of the five year term."* (Exh. 60). Thus, it would appear that, far from being fooled into a false sense of security by any supposed lulling assurances, the plaintiff actively disbelieved Deere would meet its contractual obligations. Where the plaintiff actively disbelieves representations made to it, these cannot serve as a basis for claiming fraud. *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 534, 739 P.2d 444, 451 (1987).

Thus, while Andale may have a legitimate contract claim and may have had a colorable fraud claim, the court finds the plaintiff's fraud claim is barred by the statute of limitations.

IT IS ACCORDINGLY ORDERED this 19th day of November, 1997, that defendant's motion for partial summary judgment (Dkt. No. 66) is hereby granted.