ALL WEST PET SUPPLY COMPANY, a/k/a West Denver Feed Company, Plaintiff,

v.

HILL'S PET PRODUCTS DIVISION, COLGATE–PALMOLIVE COMPANY, and Veterinary Companies of America, Inc., Defendants.

HILL'S PET PRODUCTS DIVISION, COLGATE–PALMOLIVE COMPANY, Counterclaim Plaintiff,

v.

ALL WEST PET SUPPLY COMPANY and Michael I. Bernstone, Counterclaim Defendants.

Civ. A. No. 92–1174–DES.

United States District Court, D. Kansas.

Dec. 21, 1993.

Ronald D. Heck, Heck & Sheppeard, P.A., Topeka, KS, Paul J. Hanley, Phyllis. M. Ain, Durham & Baron, P.C., Denver, CO, for plaintiff.

Steven K. Morse, Hill's Pet Nutrition, Inc., Topeka, KS, Jeffrey F. Reiman, Reiman & Associates, P.C., Denver, CO, for defendants.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the plaintiff and counterclaim defendant All West Pet Supply Company ("All West") and counterclaim defendant Michael Bernstone ("Bernstone") for partial summary judgment on the counterclaim alleging fraud (Doc. 83).

### Nature of the Claim

All West Pet Supply Company ("All West") brought this diversity suit against Hill's Pet Products Division, Colgate–Palmolive Company ("Hill's") and against Veterinary Companies of America, Inc. ("VCA"), also a division of Colgate–Palmolive Company. All West, a former Hill's distributor, alleges that Hill's breached the distributorship agreement by failing to maintain the confidentiality of certain customer and sales information provided by All West to Hill's on a periodic basis pursuant to the agreement. All West also alleges that the defendants' use of the information amounts to a violation of the Kansas Trade Secrets Act.

Hill's filed a counterclaim against All West for the amount due Hill's for pet food products sold and delivered to All West. All West has stipulated in the pretrial order that it failed to pay Hill's for these products. Hill's also filed a counterclaim for fraud against All West and Michael J. Bernstone ("Bernstone"), president of All West and the sole owner of its parent corporation, alleging that Bernstone intentionally ordered pet food products without intending to pay for them

in the event that Hill's decided not to renew the distributorship agreement beyond March 1992.

All West and Bernstone (hereinafter "counterclaim defendants") contend they are entitled to summary judgment on the counterclaim for fraud. They argue that Hill's has not come forward with sufficient evidence of Bernstone's fraudulent intent to withstand summary judgment on the counterclaim. In objecting to the motion for summary judgment, Hill's argues that under Kansas law it is unnecessary to present clear and convincing evidence of Bernstone's fraudulent intent in order to avoid summary judgment in favor of the counterclaim defendants on the fraud counterclaim.

### Jurisdiction and Venue

The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), (c)(1). Venue is proper in this district under 28 U.S.C. § 1391(a)(1)–(3), (c). There are no disputes between the parties as to either jurisdiction or venue.

### Summary Judgment Standards

 Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

 The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In opposing a properly supported motion for summary judgment, a party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go beyond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

 The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

In this case, as required by D.Kan.Rule 206(c), counterclaim defendants as the moving parties have set forth a concise statement of material facts as to which they contend no genuine issue of fact exists, properly supported by the affidavit of Bernstone and copies of relevant extracts of depositions and answers to interrogatories. They contend there is no evidence to establish Bernstone's alleged fraudulent intent when he ordered the products in question. The court finds that the moving parties have met their initial

burden under *Celotex* in support of their motion for summary judgment.

Hill's has filed a memorandum in opposition, generally challenging counterclaim defendants' assertions of undisputed facts as merely "statements of belief or intent." Under D.Kan.Rule 206(c), "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." Hill's has not "specifically controverted" counterclaim defendants' statement of undisputed facts, with the possible exception of their assertion that the decision not to pay Hill's the balance due for the products was made as a business decision following receipt of the notice of nonrenewal.[1] Therefore, the uncontroverted facts as set forth by the counterclaim defendants are otherwise deemed admitted for purposes of resolving the motion presently before the court.

### Facts

Hill's is a manufacturer of specialty pet foods. All West previously served as a regional distributor of Hill's pet food products pursuant to a series of distributorship agreements between All West and Hill's. The most recent distributorship agreement provided for a one-year term ending March 31, automatically renewable from year to year except upon either party's giving notice to the other of its intent not to renew at least 30 days prior to the expiration date.

Beginning in February, 1991, All West began to question whether Hill's would renew its distributorship agreement. Shortly thereafter, All West was notified that the agreement would be renewed for the year ending March 31, 1992. In the fall of 1991, Bernstone spoke with a representative of Hill's, Dana Morgan, concerning All West's interest in distributing another line of pet foods. According to Bernstone, upon discussing his concerns with Morgan regarding rumors that Hill's might not renew the All West distributorship, Morgan assured Bernstone that although he could not guarantee the agreement would be renewed forever, it was certainly good for 1992.[2] Bernstone interpreted this statement to mean that the distributorship agreement would remain in effect throughout calendar year 1992.

On February 27, 1992, Hill's notified All West that the distributorship agreement would not be renewed after March 31, 1992. Thereafter, All West ordered no additional pet food products from Hill's. On or about that date, after it received notice of the nonrenewal, All West made a business decision to hold all payments owed to Hill's in abeyance until it analyzed its options with regard to Hill's decision to terminate its relationship with All West.[3] Sometime after that date, as required by the terms of the agreement, All West returned approximately $45,000 worth of Hill's products that had not been sold.[4]

In opposition to counterclaim defendants' argument that there is no evidence in the record to support the requisite element of fraudulent intent,[5] Hill's contends only

---

1. In response to the movants' statement of uncontroverted facts, Hill's argues,

 "While it is certainly an undisputed fact that All West failed to make payments to Hill's in the amount of $516,517.09 ..., the reasons for this decision are not a matter of undisputed fact (as Bernstone unsuccessfully attempts to assert in paragraph 12), but rather depend on an evaluation of Bernstone's state of mind."

2. Morgan's deposition, submitted by the movants, reflects that he does not recall this conversation.

3. Hill's does not specifically or even inferentially controvert counterdefendants' statement that the decision not to pay for the pet products was made on or about February 27, 1992, following receipt of the notice of nonrenewal.

4. All West does not dispute that the value of the returned merchandise was properly credited against All West's account balance.

5. Under Kansas law, which the parties have stipulated applies to the fraud counterclaim, the elements of a fraud claim based upon a promise of future events are as follows: (1) the promisor had no intention of performing his promise at the time he made it; (2) the promisor did not perform his promise as he represented he would; (3) the promisor made the promise with the intent to deceive and for the purpose of inducing the plaintiff to act upon the promise; (4) the plaintiff reasonably relied and acted upon the promise; and (5) plaintiff sustained damages relying on the promise. *Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 360 P.2d 23, 26–27 (1961); *see also* PIK 2d 14.41.

that the issue cannot be determined on summary judgment because the issue of what Bernstone "believed" is a question of fact. Hill's argues that even if it offered no evidence to refute Bernstone's testimony regarding his state of mind at the relevant time, a genuine issue of material fact would still exist as to his credibility. Relying on cases decided by the Kansas courts, Hill's argues that a court should be cautious in granting a motion for summary judgment when the resolution of the dispositive issue requires a determination of the state of mind of one or both of the parties.[6] Hill's also argues that fraud may be inferred from circumstantial evidence.

Hill's complains that statements concerning Bernstone's beliefs, intent, or state of mind are not statements of fact entitled to conclusive weight in considering a summary judgment motion. While they may not necessarily have conclusive weight, Bernstone's assertions regarding his state of mind are certainly relevant to the fraud counterclaim, which requires Hill's to prove that Bernstone ordered the pet supplies with fraudulent intent. The nonmoving party may not defeat a properly supported motion for summary judgment without offering any concrete evidence in support of the claim and by merely asserting that the jury might not believe the moving party's denial that he had the requisite state of mind. *Anderson v. Liberty Lob-*

*by,* 477 U.S. at 256–57, 106 S.Ct. at 2514. " 'Discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." *Id.* (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984)).

The evidence offered by Hill's in support of the requisite element of fraudulent intent is slim. Hill's relies first on the deposition testimony of All West's accounting expert, Robert Purinton. In October, 1992,[7] Purinton analyzed All West's use of approximately $500,000 that would otherwise have been available to pay the debt to Hill's. Purinton testified that $145,000 of this amount was used by All West to retire a bank debt, and $200,000 was used to pay a dividend to All West's parent company, of which Bernstone is the sole owner.[8] Although Hills' does not so state in its response, Purinton also testified that $185,000 was used to underwrite All West's operating loss "from February 29th [sic], the date of notification through September 30th . . . ." Hill's contends that Bernstone's use of money that would otherwise have been available to pay the debt to Hill's is sufficient to support an inference of fraudulent intent. Hill's also argues that the jury could infer fraudulent intent because Bernstone anticipated that the distributorship might not be renewed.[9]

6. See *Credit Union of America v. Myers,* 234 Kan. 773, 676 P.2d 99, 106 (1984); *Hustead v. Bendix Corp.,* 233 Kan. 870, 666 P.2d 1175, 1178 (1983) (both cited by Hill's). In support of the same principle, see *Bowen v. Westerhaus,* 224 Kan. 42, 578 P.2d 1102, 1104–05 (1978) (citation omitted); *Henrickson v. Drotts,* 219 Kan. 435, 548 P.2d 465, 468 (1976) (action by grain dealer to recover balance due on open account from defendant, a farmer and long-time customer) (citing *Croley v. Matson Navigation Co.,* 434 F.2d 73 (5th Cir.1970) as authority for the principle).

7. See Deposition of Robert M. Purinton, May 3, 1993, at 153, 11. 12–19.

8. In reply, All West contends that this dividend was repaid to All West shortly after it was paid to the parent company, and that it was merely a noncash, bookkeeping transaction. Nevertheless, the court is bound to draw all reasonable inferences in favor of the nonmoving party.

9. Hill's also contends that Bernstone ordered merchandise without paying for it and later used

the debt as a "lever" in settlement negotiations with Hill's. Hill's has not submitted evidence to support the latter two assertions. All West submitted extensive interrogatories to Hill's seeking the facts and evidence underlying its fraud counterclaim. The interrogatories and Hill's responses have been submitted by All West in support of its motion for partial summary judgment. Hill's made just two substantive assertions in response to the interrogatories: (1) that Bernstone's communications with various Hill's employees before March 31, 1992, indicated that he recognized the distributorship might not be renewed beyond that date, and (2) that several months prior to March 31, 1992, Bernstone increased his credit limit and ordered significant quantities of merchandise from Hill's. The first assertion is supported by the record before the court, based upon Bernstone's conversation with Morgan. However, Hill's has not argued the second point in response to the summary judgment motion and has not provided affidavits, interrogatories, deposition testimony, or other evidence to support it. The court will therefore not consider it

Hill's also urges that it does not have the burden of proving fraud by clear and convincing evidence in order to defeat a summary judgment motion on that claim, even though Kansas requires such proof to establish fraud at trial. *See Rajala v. Allied Corp.*, 919 F.2d 610, 626 (10th Cir.1990) (under Kansas law, a claim of fraud must be proven by clear and convincing evidence) (citations omitted); *cert. denied,* —— U.S. ——, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991); PIK 2d 2.11, 14.40 (Notes on Use); *cf. Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816, 824 (1979) (burden of proving fraud is by a preponderance of evidence, but that evidence must be clear, convincing, and satisfactory). He relies on *Credit Union of America v. Myers*, 234 Kan. 773, 676 P.2d 99 (1984), in which the Kansas Supreme Court stated:

> A party resisting a motion for summary judgment in an action based on fraud need not present "clear and convincing" evidence of fraud in opposing the motion. The usual rules governing the ruling upon motions for summary judgment apply to actions based on fraud.

*Id.*, 676 P.2d at 106, *cited with approval in Bishop v. Mid–America Auto Auction, Inc.*, 772 F.Supp. 565, 569 (D.Kan.1991); *see also Gorham State Bank v. Sellens*, 244 Kan. 688, 772 P.2d 793, 795 (1989); *Baumann v. Excel Industries, Inc.*, 17 Kan.App.2d 807, 845 P.2d 65, 72 (citing *Gorham* ), *rev. denied* (1993).

In reply, All West argues that notwithstanding *Myers*, state law standards for granting summary judgment may not be applied by a federal court, which is bound by the standard of Fed.R.Civ.P. 56. The court agrees. *Myers* is a correct statement of the law applicable to motions for summary judgment on fraud claims brought in state courts in Kansas.[10] However, the United States Supreme Court has clearly spoken on the issue with regard to the applicable standard

of proof to be applied by *federal* courts in deciding motions for summary judgment in diversity cases on claims requiring a burden of proof greater than a preponderance of the evidence.

In *Anderson v. Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512, the Court stated,

> [W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.

*Id.* The Court went on to state,

> "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. This conclusion is mandated by the nature of the determination. The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards."

*Id.* at 254–55, 106 S.Ct. at 2513 (emphasis in original). The Court summarized its holding as follows:

> In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true

---

for purposes of resolving the motion for summary judgment. *See* Rule 56(e). Nor will the court consider the assertion, devoid of any record support whatsoever, that All West used the outstanding debt as leverage in settlement negotiations.

**10.** The Kansas rule stated in *Myers* originated in *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 606 P.2d 1009, 1014 (1980). In that decision, the Kansas Supreme Court explicitly relied upon K.S.A. 60–256 and Kansas Supreme Court Rule 141. The court also noted in passing that federal courts applied the usual summary judgment rules to fraud claims.

at both the directed verdict and the summary judgment stages. Consequently, where the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that the jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.

■ Although *Anderson v. Liberty Lobby* was a libel case, the principle it announces applies with equal force to the consideration of summary judgment on any state common law claim which carries a burden of persuasion at trial greater than a preponderance of the evidence. *See id.* at 254, 106 S.Ct. at 2513 ("This view is equally applicable to a civil case in which the 'clear and convincing' standard applies.")[11] The court therefore concludes that in federal court, in order to withstand summary judgment in favor of the defendant on a diversity claim of fraud under Kansas law, the plaintiff as the nonmoving party carrying the burden of proof at trial must present sufficient evidence *of a clear and convincing nature* to support a jury verdict in its favor.[12]

■ Kansas law defines "clear and convincing evidence" to mean that the witnesses to a fact must be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct, and weighty; and the witnesses must be lacking in confusion as to the facts at issue. *Modern Air Conditioning v. Cinderella Homes,* 596 P.2d at 824 (citations omitted). Hill's, the counterclaim plaintiff in this case, has not met its burden in opposing summary judgment of showing the court that there exists such clear and convincing evidence of fraudulent intent as to permit a reasonable jury to find in its favor on the fraud claim.

At best, Hill's evidence indicates that All West and Bernstone, *after* the distributorship was terminated, took advantage of the cash flow benefits of the decision not to pay the debt to Hill's. However, in order to prove its fraud claim, Hill's must establish that Bernstone acted with fraudulent intent *at the time of ordering the products in question,* which admittedly occurred prior to February 27, 1992, the date All West received notice of the termination. In *Modern Air Conditioning,* 596 P.2d at 824, the Kansas Supreme Court succinctly stated the principle as follows:

> When alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent representation concerning a present, existing intention to perform, when such intention is in fact nonexistent.

*See also Young v. Hecht,* 3 Kan.App.2d 510, 597 P.2d 682, 688 (1979) (plaintiff must show wrongful intent at the time the representation was made); *Prosser and Keeton on Torts* 763 (5th ed. 1984) (promise made without intent to perform is sufficient basis for deceit claim; very common illustration is the purchase of goods with a preconceived intention not to pay for them). None of the evidence to which Hill's directs the court's attention provides clear and convincing support for an inference that Bernstone acted with fraudulent intent at the time he ordered the products in question. The counterclaim defendants' motion for partial summary judgment must therefore be granted.

The court emphasizes that its grant of summary judgment in favor of All West and Bernstone does not require a determination of Bernstone's state of mind at the relevant time. Rather, the court's task is to determine whether the nonmoving party has presented clear and convincing evidence upon which the *jury* could make such a determina-

---

11. *But see Baumann v. Excel Industries, Inc.,* 17 Kan.App.2d 807, 845 P.2d 65, 71 (1993) (application of clear and convincing evidence standard at the summary judgment stage is unique to libel cases because First Amendment rights are at issue).

12. In *Bishop,* this court did not note the distinction between the Kansas rule espoused in *Myers* and the applicable procedure on summary judgment set forth by the United States Supreme Court in *Anderson.* To the extent that *Bishop* may be read to contradict the controlling guidelines set forth in *Anderson,* it must of course necessarily yield.

tion. Even if the jury were to reject Bernstone's deposition testimony regarding the reason for his decision to withhold payment for the debt, Hill's, who has the ultimate burden of proof on its counterclaim, has simply not shown the court that it has any clear and convincing evidence to support the required element of fraudulent intent.

**IT IS BY THE COURT THEREFORE ORDERED** that the motion of All West and Bernstone for partial summary judgment (Doc. 83) is hereby granted.

**IT IS FURTHER ORDERED** that the clerk shall enter judgment in favor of counterclaim defendants All West Pet Supply Company and Michael I. Bernstone, and against counterclaim plaintiff Hill's Pet Products Division, Colgate–Palmolive Company, as to the third counterclaim alleging fraud.