**H. Mikel THOMAS, Plaintiff,**

v.

**TALBOTT RECOVERY SYSTEMS, INC., D/B/A Talbott–Marsh Recovery Campus, Defendant.**

**No. 96–2311–JWL.**

United States District Court, D. Kansas.

Oct. 20, 1997.

Paul F. Pautler, Jr., Kimberly A. Jones, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Gail M. Hudek, J. Camille Williams, Hudek & Associates, P.C., Kansas City, MO, for plaintiff.

Laurence R. Tucker, Stuart K. Shaw, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, C. Bradford Marsh, Anandhi S. Rajan, Arnold E. Gardner, Long, Weinberg, Ansley & Wheeler, Atlanta, GA, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This diversity action involves a contract of employment executed by the parties that was terminated before plaintiff actually began to work for defendant. Plaintiff alleged claims

against defendant for breach of contract, fraudulent and negligent misrepresentation, retaliatory discharge, and defamation; defendant brought a counterclaim for breach of contract.

The matter is presently before the court on defendant's motion for partial summary judgment with respect to plaintiff's misrepresentation, retaliatory discharge, and defamation claims, as well as plaintiff's claim for punitive damages (Doc. 71). In its brief in opposition to the motion (Doc. 76), plaintiff voluntarily dismissed his retaliatory discharge and defamation claims, and those claims are hereby dismissed with prejudice. With respect to the misrepresentation claims, the court grants the motion in part and denies it in part. Summary judgment is granted with respect to plaintiff's fraudulent misrepresentation claims, his claim for punitive damages, and his negligent misrepresentation claim based on a representation that defendant would change treatment models; those claims are hereby dismissed. The motion is denied with respect to plaintiff's negligent misrepresentation claim based on an alleged representation by defendant's president that he had the authority to change the treatment model; that claim survives to trial, along with the parties' breach of contract claims.

## I. Facts [1]

Plaintiff H. Mikel Thomas, a resident of Kansas, is a psychiatrist specializing in addiction psychiatry. Defendant Talbott Recovery Systems, Inc., d/b/a Talbott–Marsh Recovery Campus (TMRC) is an addiction treatment center in Atlanta specializing in the treatment of impaired professionals, including physicians. In March of 1995, plaintiff entered into an employment contract with defendant, by which plaintiff's employment with defendant would begin on July 1, 1995.

At the time of defendant's recruitment of plaintiff, Dr. Douglas Talbott, TMRC's founder, served as the company's president and medical director. Benjamin Underwood was defendant's CEO. Dr. Jerome Gropper, a former dentist, served as the executive di-

rector. Dr. Richard Irons was employed at TMRC as the associate medical director.

In 1994, defendant operated under a "social model" of treatment, not a "medical model". Under a social model, physicians do not exercise primary control over patients' day-to-day treatment, as they do in a medical model of treatment. Although Dr. Talbott had the final say on all clinical decisions at TMRC, Dr. Gropper, who was not a physician, generally acted as head clinician, overseeing the day-to-day treatment of the patients and determining the length of their stay and their discharge. Physicians visited the patients only twice every month.

Dr. Talbott held a "vision" under which TMRC would change to a medical model of treatment. Dr. Talbott especially desired this change in early 1995 as the new president of the American Society 'of Addiction Medicine.

Plaintiff visited defendant in January of 1995 to discuss his employment with TMRC. During that visit, Dr. Talbott discussed his vision with plaintiff and told plaintiff that he was being recruited to convert TMRC to a medical treatment model. Dr. Talbott also stated that he was the medical director and made all final decisions regarding clinical matters. In his discussions with plaintiff, Dr. Talbott generally indicated that he bore the responsibility for making the change at TMRC. In April of 1995, after plaintiff had already signed the employment contract, plaintiff visited Atlanta again, at which time Dr. Talbott reaffirmed his desire to change over to a medical model of treatment. According to plaintiff's spouse, who accompanied plaintiff, it was very clear that Dr. Talbott wanted the changes to be made at TMRC. In reliance upon his conversations with Dr. Talbott, plaintiff sold his house in Kansas, bought a house in Georgia, and otherwise prepared to begin his employment at TMRC.

In 1994 and 1995, Dr. Richard Irons began to work to implement the change in treatment models, but he met with resistance at TMRC. Dr. Irons testified as follows:

1. In accordance with the applicable summary judgment standard, these facts are uncontroverted or related in the light most favorable to plaintiff.

Dr. Talbott's vision of change went along until approximately this time period, when suddenly Mr. Underwood became directly involved in the process and indicated that—at a notable meeting—that we would only, as he referred to it, tweak the system in terms of change. We were not going to make substantive changes. That what had worked in the past had been successful from a business standpoint, and we would only tweak the system. We would not make additional changes.

Dr. Irons testified that the "notable meeting" took place "[p]erhaps four or five months after September of '94." Nevertheless, during the course of defendant's recruitment of plaintiff, Dr. Irons trusted Dr. Talbott to effect the changes at TMRC.

In answer to a question about his responsibility at TMRC for determining the treatment program that would be used, Mr. Underwood testified as follows:

Well, I think fundamentally mine would only apply if something was presented that appeared to be certainly way out of what is considered customary in our work and it was brought to my attention perhaps by other parties who had the credentials to do so. I think I would exert some prerogative in that say-so. Otherwise I rely totally on Dr. Talbott, Dr. Wilson, the other clinicians, as well as [Dr. Gropper] as a clinician.

On June 26, 1995, Mr. Underwood reaffirmed to Dr. Irons that TMRC would not change its treatment model. Mr. Underwood told plaintiff the same thing the following day. Later on June 27, plaintiff spoke with Dr. Talbott. Plaintiff described that conversation as follows:

He said, well, I don't know if I can make a medical model.

And I said, well, what is going on?

He said, well, the way it is set up right now, Underwood and Gropper run the business.

And I said, what do you mean they run the business?

He said, they have all control of all the moneys.

And I said, I don't even know what you are talking about.

He said, I can't make the changes that I have talked about. I just cannot make the changes.

And I said, Doug, I have a house in Atlanta and you are telling me to come down to negotiate contracts. What is going on?

And he said that there would be a continuation of the model as it has always been. And he said, I can't make any changes. I just am not that powerful.

I said, but you did at Ridgeview. You left Ridgeview and you did just fine. You took Underwood and all of those guys and you brought them over to TMRC and have done really, really well. What do you mean you can't make changes?

And he said, I don't think I am powerful enough. I don't have that kind of power.

On June 29, Dr. Talbott again spoke with plaintiff, stating as follows:

I was thinking about your phone call and when you called me you asked me not to subject you to, as you termed it, the shit that [Dr. Irons] went through, and not to have you come to Atlanta unless I was prepared and guaranteed sort of a new treatment model, as you said you wanted to fire Underwood and fire Gropper and for us to have physicians take over completely, and Mike, in thinking about that I don't really have the desire or the authority to do that, and I really have to respond to your request in telling you that I don't think you ought to come to Atlanta.

Plaintiff agreed, and defendant subsequently withdrew plaintiff's employment contract. This litigation followed.

## II. Summary Judgment

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County*

*Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1).

### III. Choice of Law

■ The court concludes that Kansas law governs plaintiff's misrepresentation claims. The court applies Kansas's choice of law rules here. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In Kansas, tort actions are governed by the law of the state where the tort occurred, that is, the state where the wrong was felt. *Ling v. Jan's Liquors*, 237 Kan. 629, 634–35, 703 P.2d 731 (1985). Because plaintiff alleges financial injury in this case, he felt the wrong in Kansas, where he is a resident. Therefore, the court applies Kansas law here. *See Steele v. Ellis*, 961 F.Supp. 1458, 1463 (D.Kan.1997) (Van Bebber, J.) (fraud claim governed by law of state of plaintiff's residence); *Maberry v. Said*, 911 F.Supp. 1393, 1399 (D.Kan.1995) (same); *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F.Supp. 1445, 1456 (D.Kan.1995) (same).

### IV. Fraudulent Misrepresentation

In his brief in opposition to summary judgment, plaintiff alleges two misrepresentations by Douglas Talbott: (1) "Talbott misrepresented a future occurrence—the transfer of control of treatment away from Gropper and into the hands of licensed physicians and psychiatrists ... (i.e., the shift from a 'social model' to a 'medical model');" and (2) "Talbott misrepresented an *existing* fact: he, and only he, had the power to change treatment modalities at TMRC." Plaintiff asserts a fraudulent misrepresentation claim with respect to each alleged misrepresentation by Dr. Talbott.

■ The Kansas Supreme Court has recently stated the elements of the tort of fraudulent misrepresentation under Kansas law:

> Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage.

*Gerhardt v. Harris*, 261 Kan. 1007, 1013, 934 P.2d 976 (1997). Fraud must be proven by clear and convincing evidence. *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 727, 924 P.2d 1239 (1996).

### A. Change in the Treatment Model

■ Plaintiff first alleges that Dr. Talbott fraudulently promised him that defendant would change its treatment model. Defendant argues that it is entitled to summary judgment on this claim because plaintiff has not met his burden of producing evidence that Dr. Talbott made such a representation. The court agrees.

In his statement of facts, plaintiff relates Dr. Talbott's "vision" for a different system of treatment and his general desire to make a change. Plaintiff further relates Dr. Talbott's discussions with him regarding that vision and desire. Plaintiff does not state, however, that Dr. Talbott promised him that defendant would change its treatment models, and plaintiff's citations to the record in support of his allegation do not reveal evidence that any such representation was ever made.

For instance, in paragraph 26 of his statement of facts, plaintiff states that Dr. Talbott represented to him "that TMRC was recruiting him to convert TMRC to a medical treatment model." In paragraph 27, plaintiff states that Dr. Talbott represented to him that plaintiff "was ideal, exactly what he had been looking for, to lead them into the vision." Paragraph 24 states that Dr. Talbott, as the new national president of an addiction medicine society, "wanted to change TMRC's model to a legitimate, efficacious medical model." The evidence provided by plaintiff amply demonstrates that Dr. Talbott expressed to plaintiff the need for a change and his desire to make such a change, but plaintiff has not provided evidence that Dr. Talbott promised plaintiff that such a change would definitely take place.

Summary judgment is also appropriate on this claim because plaintiff has failed to provide evidence to satisfy the requirements of present intent and knowledge. The alleged misrepresentation by Dr. Talbott that defendant would change its treatment model relates to a future act.

To be actionable, a misrepresentation must relate to a pre-existing or present fact; statements or promises about future occurrences are not actionable. An exception exists where evidence establishes that, at the time the promise as to future events was made, the promisor did not intend to perform the promised action.

*Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1157 (10th Cir.1994) (citation omitted) (citing *Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 659–60, 360 P.2d 23 (1961)); *see also Gerhardt,* 261 Kan. at 1013, 934 P.2d 976 ("When the alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent misrepresentation concerning a present, existing intention to perform, when no such intention existed."). To succeed on this claim therefore, plaintiff must show that Dr. Talbott knew and intended at the time of the alleged representation that defendant would not in fact change treatment models.

Plaintiff has not satisfied his burden with respect to this issue. Plaintiff relies heavily on the testimony by Dr. Irons concerning Mr. Underwood's statement in early 1995 that defendant would not make substantive changes but would only tweak the treatment system. Plaintiff argues that defendant therefore knew at the time of the alleged promise that it would not be changing treatment models. This testimony by Dr. Irons does not help plaintiff, however. What is relevant here is not the knowledge or intent of another of defendant's employees, but that of Dr. Talbott, the alleged promisor. *See Flight Concepts,* 38 F.3d at 1157.

Plaintiff has provided no evidence giving rise to a reasonable inference that Dr. Talbott had a present intent not to perform. The fact that defendant did not in fact change its treatment model is not sufficient to establish the requisite intent. "Where a claim of fraud is predicated on a promise or statement concerning future events, there must be more than mere nonperformance to show fraudulent intent." *Whitten v. Farmland Indus., Inc.,* 759 F.Supp. 1522, 1542 (D.Kan.1991) (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 78, 596 P.2d 816 (1979)); *accord Eckholt v. American Business Information, Inc.,* 873 F.Supp. 526, 532 (D.Kan.1994); *Young v. Hecht,* 3 Kan.App.2d 510, 515, 597 P.2d 682 (1979); Restatement (Second) of Torts § 530 cmt. d (1977). "Other circumstances of a substantial character must exist which would support an inference of wrongful intent at the time of making the representation." *Young,* 3 Kan.App.2d at 515, 597 P.2d 682. No such other substantial circumstances exist here to show an intent to deceive by Dr. Talbott.

For example, plaintiff has not pointed to any evidence that Dr. Talbott attended the meeting at which Mr. Underwood declared that no major change would be made or otherwise had knowledge of that declaration. Nor has plaintiff cited any evidence that such meeting took place before the alleged representation to plaintiff, which apparently occurred in January of 1995 when plaintiff visited TMRC. Moreover, plaintiff has not shown any potential benefit known to defen-

dant at the time of its negotiations with plaintiff that would accrue from the making of the alleged promise and its subsequent failure to perform, such as would justify an inference of a present intent not to perform. *See Young,* 3 Kan.App.2d at 515, 597 P.2d 682.

In fact, plaintiff's own evidence indicates that Dr. Talbott did still want and intend to make the change at TMRC. In paragraph 24 of his statement of facts, plaintiff states that in the Spring of 1995, as the new president of the national organization, Dr. Talbott "wanted" to change defendant's model. Plaintiff's wife testified that, at a meeting after plaintiff had already signed the employment contract, "it was very clear Dr. Talbott wanted these changes to be made." Plaintiff points to evidence that Dr. Irons met with resistance in trying to implement a change in the treatment model, but Dr. Irons testified that during the course of defendant's interviewing and negotiating with plaintiff, he trusted Dr. Talbott to have the changes made. *See Flight Concepts Ltd. Partnership v. Boeing Co.,* 819 F.Supp. 1535, 1549 (D.Kan.1993) (no evidence of present intent not to perform promise to market an aircraft where defendant was in fact enthusiastic about the project and had a desire to see it succeed), *aff'd,* 38 F.3d 1152 (10th Cir.1994).

The court thus concludes that defendant is entitled to summary judgment on this claim of fraudulent misrepresentation because plaintiff has not provided evidence that Dr. Talbott knew that the alleged representation was false or that he intended to deceive plaintiff thereby. *See Whitten,* 759 F.Supp. at 1542 (summary judgment appropriate where, even if representations were made, were false, and were justifiably relied upon, there was no evidence of the declarants' knowledge of their falsity or wrongful intent).

### B. *Authority to Change the Model*

█ Plaintiff also alleges that Dr. Talbott fraudulently misrepresented that he had the authority to change defendant's treatment model if he so chose. Defendant contends that Dr. Talbott made no such representation. It is true that plaintiff has not provided evidence that Dr. Talbott expressly and exactly represented that he had the authority to change the treatment model. There is evidence, however, that Dr. Talbott told plaintiff that he was the medical director and made all final decisions regarding clinical matters. Moreover, the evidence relating Dr. Talbott's discussions with plaintiff reveals that Dr. Talbott generally indicated to plaintiff that the responsibility for implementing the desired change lay with Dr. Talbott. The court therefore concludes that plaintiff has provided sufficient evidence that Dr. Talbott, in essence, represented that he had the requisite authority to effect the change in treatment model.

Defendant next argues that any such representation was not false. In response, plaintiff contends that Mr. Underwood testified that *he* in fact controlled decisions regarding the treatment model. Plaintiff mischaracterizes the relevant testimony, however. As set out above, Mr. Underwood testified that he generally did *not* bear any responsibility concerning the treatment model decision and deferred to Dr. Talbott and the clinicians, but would only intercede in the event of an aberrant decision. This testimony does not raise the inference that Dr. Talbott did not have the authority he allegedly asserted.

Nevertheless, defendant is not entitled to summary judgment on this basis. Plaintiff also cites to his own deposition testimony about Dr. Talbott's conversation with him at the time the parties went their separate ways. According to plaintiff, Dr. Talbott stated that Mr. Underwood and Dr. Gropper ran the business and that he did not have the power to make the changes. Such testimony, when viewed in the light most favorable to plaintiff, is sufficient to raise a reasonable inference that Dr. Talbott did not in fact possess the authority to change defendant's treatment model and that any representation to the contrary was false.

The court does conclude, however, that plaintiff has not satisfied his burden to produce evidence that Dr. Talbott knew of the falsity of the alleged representation or that he had the requisite intent to deceive. Plaintiff relies on Dr. Underwood's testimony about his role in the decision-making, but,

again, that testimony actually supports the position that Dr. Talbott did have the authority. In fact, as with the other alleged misrepresentation here, the evidence provided by plaintiff on the whole indicates that Dr. Talbott believed that he did have the authority regarding the treatment models. *See Hein v. Techamerica Group, Inc.,* 1992 WL 221549, at *4 (D.Kan. Aug.24, 1992).

Plaintiff also argues that Mr. Underwood had already rejected Dr. Talbott's vision, but, as explained above, there is no evidence that Dr. Talbott knew that fact or that such rejection preceded Dr. Talbott's alleged representations about his authority. Plaintiff can only point to Dr. Talbott's eventual admission of his lack of authority, but such evidence is not sufficient to imply that Dr. Talbott knew that fact months before or that he intended to deceive plaintiff on that score.

The court notes that summary judgment in favor of defendant does not require a determination of Dr. Talbott's state of mind at the relevant time; "[r]ather, the court's task is to determine whether the nonmoving party has presented clear and convincing evidence upon which the jury could make such a determination." *All West Pet Supply Co. v. Hill's Pet Prods. Div.,* 840 F.Supp. 1426, 1432 (D.Kan.1993). Plaintiff has not provided clear and convincing evidence here that Dr. Talbott acted with an intent to deceive plaintiff about his authority. Accordingly, the court grants summary judgment in favor of defendant on this claim of fraudulent misrepresentation.

## V. Negligent misrepresentation

■ Plaintiff also brings claims of negligent misrepresentation based on the two representations discussed above. The Kansas Supreme Court has recognized a cause of action for negligent misrepresentation. *Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 605, 876 P.2d 609 (1994). The court expressly adopted Restatement section 552, which provides:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business trans-

actions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 604, 876 P.2d 609 (quoting Restatement (Second) of Torts § 552(1) (1977)). Thus, the elements of negligent misrepresentation differ from those of fraud only with respect to the standard by which the defendant is charged with knowledge of the representation's falsity. *See id.*

### A. Change in the Treatment Model

■ The court concluded above that plaintiff had not provided evidence that Dr. Talbott actually promised plaintiff that defendant would change its treatment model. That conclusion also dooms the corresponding negligent misrepresentation claim, and summary judgment is appropriate.

■ Moreover, a negligent misrepresentation cause of action is not appropriate here because the alleged misrepresentation involved a future event. Dr. Talbott cannot have negligently stated an intention to make a change in the treatment model in the future; he either had such intent or he didn't, and thus fraudulent misrepresentation is the only applicable theory of recovery. This court addressed the same question in *Hippen v. First National Bank,* 1992 WL 73554 (D.Kan. Mar.19, 1992), concluding that the "[p]laintiffs cannot sustain a claim that defendants 'negligently' entered into an oral promise they did not intend to keep." Id. at *5. The same conclusion was reached in *Eckholt,* in which the court stated:

Eckholt's claim is that defendants were negligent in representing their then-current intent to employ him pursuant to the terms of the employment agreements.... [I]t appears to the Court that defendants either intended to carry out their promises, or they did not. To recognize a claim for negligent promise, on this record, would be to endow every breach of contract with a potential tort claim for negligent promise. The Seventh Circuit recently noted as much in a similar situation:

"... if one making representations had a present intention not to perform them, the aggrieved party's claim would properly and logically be one for intentional misrepresentation ... not one based on negligence."

873 F.Supp. at 532 (quoting *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.*, 1 F.3d 621, 628 n. 7 (7th Cir.1993)); *see also O'Bryan v. Wendy's Old Fashion Hamburgers of New York, Inc.*, 1997 WL 158296, at *7 (D.Kan. Mar.19, 1997). Similarly here, plaintiff cannot sustain a claim of negligent misrepresentation with respect to any promise by Dr. Talbott regarding a future act.

### B. Authority to Change the Model

 The court concludes that plaintiff has provided evidence supporting his claim of negligent misrepresentation based on Dr. Talbott's alleged representation that he had the authority to change defendant's treatment model sufficient to withstand summary judgment. As stated above, questions of fact remain concerning whether the alleged representation was made and whether such representation was actually false. Furthermore, plaintiff's failure to provide evidence that Dr. Talbott knew of the statement's falsity or intended to deceive plaintiff is not relevant to this claim. The court concludes that a jury could reasonably believe that Dr. Talbott failed to exercise reasonable care in knowing whether his statement was true and in communicating that information to plaintiff. The fact that Dr. Talbott was defendant's president raises a reasonable inference that Dr. Talbott should have known the scope of his own decision-making authority, and a jury could reasonably find that if Dr. Talbott misrepresented that he had authority he did not in fact have, he acted negligently. Thus, an issue of fact remains.

Defendant argues that the misrepresentation here "is only relevant when tied directly with that of a future occurrence—the alleged change from a social to a medical model." Defendant does not cite any authority in support of that proposition, however. The court is unwilling to conclude as a matter of law that plaintiff may not pursue this claim in the absence of an actionable misrepresentation that defendant would in fact change treatment models. The claim's relation to Dr. Talbott's stated desire to make the change and his recruitment of plaintiff to further that purpose is sufficient to raise an inference that plaintiff suffered damages from his reliance on the alleged misrepresentation about Dr. Talbott's authority.

### VI. Punitive Damages

Defendant also seeks summary judgment on plaintiff's claim for punitive damages under Kansas law. After plaintiff dismissed his retaliatory discharge and defamation claims, he based his claim for punitive damages only on his fraudulent misrepresentation claims. Because the court has granted summary judgment on those claims, plaintiff is not entitled to recover punitive damages. Accordingly, the court grants summary judgment on plaintiff's claim for punitive damages.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for partial summary judgment (Doc. 71) is granted in part and denied in part. The motion is granted with respect to plaintiff's fraudulent misrepresentation claims, his claim for punitive damages, and his negligent misrepresentation claim based on a representation that defendant would change treatment models; those claims are hereby dismissed. The motion is denied with respect to plaintiff's negligent misrepresentation claim based on Dr. Talbott's alleged representation that he had the authority to make the change in treatment models, which claim survives to trial.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's retaliatory discharge and defamation claims are hereby dismissed with prejudice.

**IT IS SO ORDERED.**